625 F.2d 1143
 W. E. DAVIS, Sr.; W. E. Davis, Sr., Guardian for Anna Marie
Davis, a minor and W. E. Davis, Sr., as Next
Friend of W. E. Davis, III, a minor, Appellants,
v.
C. P. STEWART, State Exec. Dir., N. C., State ASCS
Committee, Dept. of Agri., R. W. Wilkins, Jr., St. ASCS
Chrmn., Committeemen: J. W. Hall, L. W. Holley, C. L.
McLawhorn and Z. H. Ponder; Joseph J. Ward, Chrmn., Duplin
County ASCS Cy., Comm., Committeemen: George R. Cowan,
Willard L. Westbrook, Jack D. Patterson and Eugene C. Wells,
Sr.; William J. Becton, Chrmn. Lenor Cy. ASCS Cy. Comm.,
Committeemen: R. E. L. Johnston, Jr., Wm. R. Taylor, Jr.,
Seth A. Dawson and Leonard M. Vause; Omax Barefoot, Chrmn.
Review Committee, Robert Pope and Newton Worley, Members,
Review Committee, Appellees.
 No. 79-1489.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 7, 1980.
Decided July 23, 1980.
 
 Gregory B. Crampton, Raleigh, N. C. (Broughton, Wilkins, Ross & Crampton, P. A., Raleigh, N. C. on brief), for appellants.
 John M. Owens, Asst. U. S. Atty., Raleigh, N. C. (George M. Anderson, U. S. Atty., Raleigh, N. C., on brief), for appellees.
 Before RUSSELL, HALL and PHILLIPS, Circuit Judges.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 On this appeal plaintiffs, owners of three tobacco farms, challenge the propriety of administrative actions by defendants that resulted in a decrease in the tobacco allotments and quotas for their farms. The district court granted defendants' motion for summary judgment and held that the reductions were correct. We agree with the district court that defendants' actions were proper and affirm.
 
 
 2
 * In late 1975 and 1976 Agriculture Stabilization and Conservation Service County Committees for the counties in which the farms were located began an investigation into the disposition of tobacco that was apparently produced on the farms in 1975. The investigators visited the farms and determined that the farms had been overplanted, that is, the number of acres planted exceeded the allotments for the farms, and estimated that 97,198 pounds of tobacco had been produced but not accounted for by the operator of the farms. Reduced tobacco allotments and quotas for plaintiffs' farms were prepared for the 1977 crop year but were not implemented until 1978 because the farms had been leased in 1977 with the expectation of unadjusted allotments. Plaintiffs contested the 1978 allotments before a local review committee, which upheld the reduced allotments, and then sought judicial review. See 7 U.S.C. §§ 1363-1366.
 
 II
 
 3
 By statute, court review of review committee determinations "shall be limited to questions of law, and the findings of fact by the review committee, if supported by evidence, shall be conclusive." 7 U.S.C. § 1366. Under the complex statutory and regulatory scheme designed to control the supply of tobacco, a particular farm will receive a farm acreage allotment, the number of acres that may be planted, and a farm marketing quota, the number of pounds that may be marketed. 7 U.S.C. § 1314c.
 
 
 4
 The allotment and quota for a particular farm is calculated by first taking the farm's prorata share of the national allotment and quota and then adjusting this share to reflect overmarketing and undermarketing in the previous year. 7 U.S.C. §§ 1314c(a)(4), (8). Under the regulations promulgated by the Secretary of Agriculture, records must be kept of the marketings of tobacco produced on the farm. E. g., 7 C.F.R. § 725.91. The determination whether overmarketing or undermarketing has occurred is calculated from farm production records, and the allotment and quota for the next year are adjusted accordingly.
 
 
 5
 This share may be further reduced if tobacco from one farm is marketed as having been produced on another farm or if proof of disposition of tobacco is not furnished. 7 U.S.C. §§ 1314c(f), 1313(g). This reduction is made for certain violations of the regulatory scheme and is made in addition to other adjustments to the allotment and quota. 7 C.F.R. § 725.98(g). Under the regulations a reduction for a failure to account violation may be made if the operator of the farm fails to furnish information concerning the disposition of tobacco produced on the farm. 7 C.F.R. § 725.98(f). The reduction for violations is calculated under § 725.98(g) and is essentially a penalty reduction. The regulations provide that a penalty reduction for a failure to account violation shall not be made if the person operating the farm for the year for which the quota is being established did not aid, acquiesce or cause the failure to furnish proof of the disposition of tobacco. 7 C.F.R. § 725.98(f).
 
 
 6
 Therefore, the allotment and quota for a particular farm is established by adjusting the farm's prorata share of the national allotment and quota to reflect any undermarketings and overmarketings from the previous year and by reducing these figures if certain violations have occurred. Because the adjustment for undermarketing or overmarketing is made on the basis of farm production records and because these records may be incorrect if violations have occurred, the regulations provide that the records shall be corrected when "farm data for actual marketings is determined to be incorrect because of a violation." 7 C.F.R. § 725.98(n). Therefore, a violation that causes farm marketing records to be inaccurate may have two effects on the allotment and quota: first, a penalty reduction may be made under § 725.98(g); and, second, the farm records may be corrected under § 725.98(n), which then requires an adjustment in the allotment and quota to reflect the undermarketing or overmarketing that is revealed by the corrected records.
 
 
 7
 The review committee, in upholding the reduction in allotments and quotas for plaintiffs' farms, found that quantities of tobacco had been produced but not accounted for and concluded that the unaccounted for tobacco had been marketed but not reported. The review committee found that the failure to account violation was one for which correction of the marketing records could be made. After correction of the records under § 725.98(n), the quotas and allotments were reduced to reflect overmarketing of the unaccounted for tobacco. The review committee specifically noted that no penalty reduction was made for the § 725.98(f) failure to account violation because plaintiffs satisfied an exception in the regulations. The reductions at issue here are based solely on the corrections made to the farm records under § 725.98(n).
 
 III
 
 8
 Plaintiffs argue that there is no evidence in the record that a violation occurred, that the review committee found no § 725.98(f) failure to account violation, and the finding of a violation is a prerequisite to the application of subsection (n). The short answer to this argument is that the review committee did in fact find that a failure to account violation as defined in subsection (f) occurred and that this violation justified correction of the records under subsection (n). The committee did not reduce the quotas and allotments under the provision of § 725.98(f) because plaintiffs satisfied an exception to the penalty provisions, but the committee's determination that no reduction was made under subsection (f) is not tantamount to a finding that no subsection (f) violation occurred. The committee's findings of fact explicitly state that the disposition of quantities of tobacco produced on plaintiffs' farms was not explained satisfactorily, and the committee concluded that the reduction was proper because a failure to account violation under subsection (f) triggers the correction of records provision under subsection (n). Clearly, the review committee found that a failure to account violation had occurred on plaintiffs' farms and this finding of fact is supported by substantial evidence. See Review Committee v. Tilley, 275 F.2d 264, 273 (8th Cir. 1960). See also Graham v. Lawrimore, 287 F.2d 207, 209 (4th Cir. 1961).
 
 
 9
 Plaintiffs' second argument is that the failure to account violation was not shown to be an "actual marketing" violation and that records may only be corrected if an actual marketing violation occurred. Subsection (n) provides for record correction when "farm data for actual marketings is determined to be incorrect because of a violation." We agree with plaintiffs' contention that a subsection (n) correction does, by its terms, require a showing that the farm's marketing records are incorrect because of a violation. Before a failure to account violation can trigger the provision for correction of records, there must be some evidence that the unaccounted for tobacco was in fact marketed. Absent any evidence of this sort, the correction of records may not be made because subsection (n) has no application unless the violation caused the farm marketing records to be incorrect. However, the farm operator need not be caught in the act of illicitly marketing the tobacco before the correction of records properly may be made. If there is substantial evidence in the record to support an inference that the unaccounted for tobacco was in fact marketed, the records may be corrected and the farm's allotment and quota reduced to reflect overmarketing. The review committee did find that the unaccounted for tobacco was marketed but not reported. This inferential finding is amply supported by evidence in the record and is, therefore, conclusive. We have considered plaintiffs' other assignment of error and find it without merit. The judgment of the district court is affirmed.
 
 
 10
 AFFIRMED.