**Lloyd L. McLAMB, Appellee,**

v.

**Robert D. POPE; Newton D. Worley; Omax Barefoot; Agriculture Stabilization and Conservation Service Review Committee, Appellants.**

No. 81–1095.

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1981.

Decided Aug. 27, 1981.

Irene M. Solet, U. S. Dept. of Agriculture, Washington, D. C. (Terrence G. Jackson, James O. Boyd, U. S. Dept. of Agriculture, Leonard Schaitman, Asst. Director, Civil Div., U. S. Dept. of Justice, Raymond W. Fullerton, Asst. Gen. Counsel, Washington, D. C., on brief), for appellants.

James R. Levinson, Smithfield, N. C., for appellee.

Before RUSSELL, HALL and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

The government appeals a magistrate's grant of summary judgment reversing an administrative reduction of Lloyd McLamb's 1978 acreage allotment and marketing quota for flue-cured tobacco. The magistrate ruled that a review committee of the Agricultural Stabilization and Conservation Service (ASCS) of the Department of Agriculture improperly imposed the allotment and quota reduction for overmarketing. The bases of his determination were that there was insufficient evidence to support the committee's conclusion that unaccounted for tobacco was marketed by false identification from McLamb's farm and that the reduction was unfair. Finding the evidence sufficient to support the reduction and also concluding that the reduction is not unfair under the applicable statutory and regulatory scheme, we reverse.

## I.

McLamb, a farmer in eastern North Carolina, leased his farm in 1976 to a man named Johnson, who had also leased several farms from others that year in order to raise tobacco. At the end of the season, the 1976 marketing card for McLamb's farm indicated that there had been an undermarketing of · several thousand pounds of tobacco; a visual inspection by a county ASCS representative that fall, however, established that the farm's production had actually exceeded quota limits. Much of the tobacco grown on the McLamb farm, therefore, was not accounted for. Johnson had earlier burned a large amount of commingled tobacco grown on several farms, and McLamb's farm received credit for its pro rata share of the destroyed tobacco. The ASCS county committee determined that the remainder of the unaccounted for tobacco had been marketed by false identification,[1] and the review committee upheld the finding.

These determinations were not completed until 1978. In 1977, because the investigation was still in progress, the marketing quota for McLamb's farm was actually increased by 7,862 pounds as a result of the apparent undermarketing in that amount shown on his 1976 marketing card. In 1978, the government reduced McLamb's marketing quota for that year by 13,086 pounds to reflect the overmarketing in 1976 of 5,224 pounds and the erroneous undermarketing carryover credit of 7,862 pounds allowed in 1977.

## II.

■ Our review of the review committee's reduction determination is limited by the Agricultural Adjustment Act, 7 U.S.C. § 1281, *et seq.*, to questions of law. 7

1. 7 C.F.R. § 725.51(1) states that false identification occurs if:
   (1) Tobacco was marketed or was permitted to be marketed in any marketing year as having been produced on the acreage allotment for any farm which, in fact, was produced on a different farm;
   (2) Tobacco was marketed or permitted to be marketed in any marketing year from a farm and was not identified by a tobacco marketing card for the farm;
   (3) The farm operator or any other producer on a farm permits the use of the tobacco marketing card for the farm to record a marketing of tobacco when, in fact, no tobacco was marketed from the farm.

U.S.C. § 1366. The review committee's findings of fact, if supported by substantial evidence, *see Davis v. Stewart*, 625 F.2d 1143 (4th Cir. 1980), are conclusive. 7 U.S.C. § 1366.

We first address the factual issues raised on appeal. McLamb challenges the review committee's finding that 27,200 pounds of tobacco—an amount in excess of the 1976 effective quota of 15,374 pounds—were produced on the farm and also its finding that a portion of that tobacco was marketed by false identification. The ASCS county committee determined the amount of tobacco produced by establishing that the farm had yielded 1,600 pounds per acre and that 17 acres of tobacco had actually been planted. A county committee investigating an allotment and quota violation is permitted to determine the quantity of tobacco produced in violation, if the actual quantity is not known, "by taking into consideration the condition of the crop during production, if known, and such other information as is available." 7 C.F.R. § 725.98(g). This the county committee did: it visited the farm, inspected the crop residue, and compared the farm with others in the area in estimating yield per acre, and it discerned by actual inspection of the farm and residue the acreage planted in tobacco. There is thus substantial evidence to support the review committee's finding that the farm produced 27,200 pounds of tobacco in 1976.

The second challenged finding is that a portion of that tobacco was actually marketed by false identification. The review committee, crediting the farm with the tobacco marketed on the farm's marketing card and with its prorated share of commingled tobacco that was destroyed by Johnson, concluded that the balance of the tobacco produced was falsely identified,

that is, marketed but not identified on the farm marketing card. Inferential as well as direct evidence can support the finding that the excess tobacco was marketed under false identification. *See Davis v. Stewart*, 625 F.2d 1143, 1146 (4th Cir. 1980) (farm operator need not be "caught in the act of illicitly marketing the tobacco" before farm records can be corrected for overmarketing, if there is substantial evidence in the record to support an inference that unaccounted for tobacco was in fact marketed). The evidence that McLamb's farm produced an amount of tobacco in excess of its 1976 quota and that the marketing card for the farm reflected an undermarketing, in light of McLamb's lack of an affirmative explanation of what became of the tobacco, generously supports the inference that the remainder of the tobacco (with the exception of the prorated share of destroyed tobacco) was falsely identified.[2]

The evidence thus supports the ASCS review committee's challenged findings of fact, and the magistrate erred in deciding to the contrary.[3]

### III.

The 1978 reduction was made subsequent to a correction of farm records under 7 C.F.R. § 725.98(n).[4] In *Davis v. Stewart*, this court reviewed the statutory and regulatory scheme for the setting and adjustment of tobacco allotments and quotas. Under section 725.98(n), farm records may be corrected if it is determined that the farm data for actual marketings are inaccurate because of a violation. The correction in turn requires an adjustment in the allotment and quota for overmarketing or undermarketing, the adjustment being made to control the nationwide supply of tobacco. An adjustment made for overmarketing is not a penalty reduction, and, indeed, it is

---

2. In seeking review of his quota, McLamb bore the burden of proof regarding all questions of fact. 7 C.F.R. § 711.21(e).

3. We have considered McLamb's other arguments concerning sufficiency of the evidence and conclude that they are without merit.

4. 7 C.F.R. § 725.98(n) reads:

   Where farm data for actual marketings is determined to be incorrect because of a violation, the records shall be corrected for each farm on which the tobacco was produced, and for each farm whose card was used to identify the marketings.

separate from and in addition to any penalty reduction assessed for the underlying violation. *Davis v. Stewart*, 625 F.2d at 1145. An adjustment following a correction of farm records under section 725.98(n) is made to help stabilize the tobacco market, and it is made regardless of the farm owner's responsibility for the overmarketing. Adjustment of the allotment and quota for McLamb's farm following the correction of the farm's records was thus appropriate, even though it was Johnson who caused the overmarketing.

■ The requirements for an allotment and quota reduction for overmarketing pursuant to section 725.98(n) are that there be both a triggering violation and an actual marketing of the tobacco. The review committee found that 13,086 pounds of tobacco grown on McLamb's farm had been falsely identified. This finding satisfies both requirements, as marketing is an essential element of the violation of falsely identifying tobacco. The review committee, therefore, had the authority to correct the farm's records under section 725.98(n) and to adjust McLamb's allotment and quota to compensate for the overmarketing which resulted from the violation.

In upholding the records correction and resulting allotment and quota reduction, the review committee found that the correction and reduction represented the entire amount of tobacco falsely identified in 1976. On its face the finding suggests that the reduction was not simply for overmarketing but was for all of the tobacco improperly marketed in 1976.[5] A close inspection of the government's calculations, and especially the calculations performed by the county committee and incorporated in the record of the hearing before the review committee, convinces us, however, that the reduction actually represents the amount of tobacco overmarketed in 1976 (5,224 pounds), plus the carryover poundage erroneously allowed in 1977 (7,862 pounds) that created an overmarketing for that year also. The reduction of the 1978 quota by 13,086 pounds,

therefore, resulted from overmarketings in 1976 and 1977. Despite the misleading shorthand summary by the review committee, the reduction was not unfairly imposed but was proper as one made in consequence of the correction of the farm records, and the magistrate was in error in declining to adopt the reduction and in granting summary judgment to McLamb. His decision is accordingly reversed and the case remanded for reimposition of the allotment and quota reductions.

*REVERSED AND REMANDED.*

---

5. Because McLamb satisfies an exception in the regulations, *see* 7 C.F.R. § 725.98(d), he was not subject to a penalty reduction for the marketing of the falsely identified tobacco.