**Charles E. HAM, Quentin O. Livingston, and Pete M. Riffe, Members of the Peanut Marketing Quota Review Committee for Caddo County, Oklahoma, Appellants,**

v.

**Jimmie GABEHART, Ronald Smith, Dean Lierle, and Herschel Mullins, Appellees.**

**No. 56940.**

Court of Appeals of Oklahoma, Division No. 1.

Feb. 8, 1983.

Released for Publication by Order of Court of Appeals March 11, 1983.

---

Leonard Schaitman, Asst. Director, Appellate Staff Civil Div., Dept. of Justice, Washington, D.C., John E. Green, First Asst. U.S. Atty., Oklahoma City, James Michael Kelly, Associate General Counsel, Raymond W. Fullerton, Asst. Gen. Counsel, Irene M. Solet, Gen. Counsel, U.S. Dept. of Agriculture, Washington, D.C., for appellants.

Buzbee & Upchurch by Virgil L. Upchurch, Anadarko, for appellees.

ROBINSON, Judge:

Under the Agricultural Adjustment Act of 1938, as amended [1] (Act), the Secretary of the United States Department of Agriculture established a peanut marketing quota system,[2] under which eligible farms are assigned acreage allotments which may be planted with peanuts.[3] Each farm is also assigned a poundage quota (calculated by multiplying the acreage allotment by the farm's established yield) which represents the total number of pounds of peanuts which can be marketed from the farm without payment of penalty.[4] The Agricultural Stabilization and Conservation Service

---

1. 7 U.S.C. § 1281 *et seq.*

2. 7 C.F.R., Part 729—the applicable code of federal regulations (C.F.R.) is the 1980 edition, i.e., the regulations covering the 1979 crop year—the year involved in this case.

3. 7 C.F.R. § 729.8.

4. 7 C.F.R. §§ 729.3(m), 729.16.

(ASCS) county office notifies each producer every year of his farm's poundage quota and furnishes him with a marketing card showing the quota figure. This card must be presented to the buyer for the posting of sales when the producer markets his crop.[5] Regulations make the producer responsible for the correctness of entries on his marketing card. Any errors are to be corrected by return of the card to the ASCS county office where ASCS staff will make the necessary changes.[6]

Under the terms of the Act and regulations, a producer is required to pay a penalty on any peanuts he markets in excess of his assigned quota.[7] The basic penalty rate for the 1979 crop year was 25.2¢ per pound.[8] The Act and regulations also provide, however, for a reduced penalty rate if the Secretary of Agriculture acting through the county Agricultural Stabilization and Conservation Committee (ASC) determines that: (1) the overmarketing was done unintentionally or unknowingly by a producer and/or handler/buyer, (2) reduction in the penalty would not impair the effective operation of the peanut price support program, and (3) the producer or handler/buyer in question made good-faith efforts to comply fully with the terms and conditions of the program.[9] The penalty rate for excess peanuts marketed in 1979 through unintentional error was 4.2¢ per pound.[10] The producer and the handler are jointly and severally liable for any uncollected penalty for over-marketing of peanuts.[11]

In the instant case, the ASC committee for Caddo County made a determination that the appellees, four local peanut producers, had marketed peanuts in excess of their 1979 quotas and that such over-marketings were not "unintentional" within the meaning of the Act and the regulations. The Caddo County ASCS office mailed to each

appellee a form MQ–24, Notice of Peanut Allotment and Poundage Quota, notifying him of his alloted acres and poundage quota for 1979. Prior to harvest of the peanuts, the county ASCS office mailed a form MQ–76, Peanut Marketing Card, to each of the appellees.

Each of the appellees delivered his marketing card to Johnson Peanut Company, the handler/buyer who purchased the peanuts. The poundage quota entry on each marketing card was at some time signed by an unknown person and altered to increase the appellees quota. The poundage quota was increased by 4,000 pounds on appellee Dean Lierle's marketing card, by 22,000 pounds on appellee Jimmie Gabehart's card, by 8,800 pounds on appellee Herschel Mullins's card, and by 5,000 on appellee Ronald Smith's card. Consequently, each of the four appellees marketed some excess peanuts as quota peanuts and since quota peanuts sell at a higher price than non-quota or excess peanuts, the appellees received a price advantage as a result of the alterations.

Upon learning of the alterations, the Caddo County ASC committee assessed each of the appellee-producers a penalty of 25.2¢ per pound on the amounts over-marketed. Thereafter, the appellees requested a hearing before a review committee pursuant to 7 U.S.C. § 1363. The review committee (composed of the named appellants) affirmed the Caddo County ASC committee's decision, determining that the over-marketings were not unintentional within the meaning of 7 U.S.C. § 1359(k). The review committee was unable to ascertain who altered or changed the farm poundage quota figures on the marketing cards and there was no evidence that any of the four appellees had done so themselves or that they

---

**5.** 7 C.F.R. § 729.58.

**6.** 7 C.F.R. § 729.44.

**7.** 7 U.S.C. § 1359(a); 7 C.F.R. §§ 729.3(k), 729.46.

**8.** 7 C.F.R. § 729.46(c).

**9.** 7 U.S.C. § 1359(k) which has now been amended to 7 U.S.C. § 1359(f–1); 7 C.F.R. §§ 729.46(d), 729.47(a)(1) (1981 ed.).

**10.** 7 C.F.R. § 729.46(d); (45 Fed.Reg. 6082 (1980)).

**11.** 7 U.S.C. § 1359(a).

were aware of the alteration at the time of marketing their 1979 crops. Each of the appellees subsequently filed an action in the District Court of Caddo County.[12]

The district court held that the review committee's assessment of penalties at the basic penalty rate in these cases was not justified because the alterations had not been knowingly or intentionally caused by the appellees. The district court ordered the cases remanded to the review committee with directions to make a determination that the alterations of appellees' farm poundage quota entries on their peanut marketing cards were "unintentional" and to reduce the penalty assessed to the sum of 4.2¢ per pound. The court made no findings regarding whether the assessment of penalties at the lower rate would impair effective operation of the peanut price support program or whether the appellees had made good-faith efforts to comply fully with the program's terms and conditions.[13]

Appellants contend that the review committee decision that the alterations of the producers' marketing cards were not unintentional within in the meaning of 7 U.S.C. § 1359(k) is supported by substantial evidence and such decision should not have been disturbed by the district court. Appellants further contend that the district court exceeded its authority when it ordered reduction of marketing quota penalties on the ground that the alterations were unintentional, without regard to other statutory and regulatory conditions for application of the reduced penalty rate.

■ Was the review committee's decision supported by substantial evidence? Judicial review of determinations by marketing quota review committees is limited by 7 U.S.C. § 1366 to questions of law. The review committee's findings of fact, if supported by substantial evidence, are conclusive.[14] Such a determination does not require that the evidence be weighed, but only requires that there be evidence tending to support the order, although such review must entail the whole of the evidence found in the record, including such evidence which fairly detracts from the weight thereof.[15]

■ The Act provides that:

[T]he amount of any penalty assessed under this section may be reduced, in accordance with regulations issued by the Secretary, if the Secretary determines that the marketing subject to the penalty was done unintentionally or unknowingly and that the reduction in the amount of the penalty would not impair the effective operation of the price support program for peanuts. 7 U.S.C. § 1359(k).

Pursuant to 7 U.S.C. § 1375(b),[16] the Secretary issued regulations governing application of the lower penalty rate:

[I]f the marketing of quota peanuts for which a penalty is to be assessed was done unintentionally or unknowingly by the producer and/or handler, the penalty shall be assessed at a reduced rate ..., upon a determination by the county ASC committee that the error in excess marketing was unknowingly and unintentionally made and that a reduction in the amount of penalty would not impair the effective operation of the price support program for peanuts. The provisions of this paragraph shall be applicable only to producers or handlers who made a good-faith effort to comply fully with the terms and conditions of the program.... 7 C.F.R. § 729.47(a)(1) (1981 ed.).

12. Jurisdiction for such suits lies either in Federal District Courts or in "any court of the state having general jurisdiction, sitting in the county or district in which (petitioner's) farm is located...." 7 U.S.C. § 1365.

13. See, 7 U.S.C. § 1359(k); 7 C.F.R. § 729.-47(a)(1) (1981 ed.).

14. Davis v. Stewart, 625 F.2d 1143 (4th Cir. 1980).

15. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

16. 7 U.S.C. § 1375(b) provides:
The Secretary shall prescribe such regulations as are necessary for the enforcement of this subchapter.

The evidence clearly showed that the over-marketings resulted from alterations of the farm poundage quota figures on the marketing cards of all four appellees. While there is no evidence that the appellees were responsible for or had knowledge of the alterations, the fact remains that the increased quota modifications were by their very nature deliberate and intentional. In reaching their conclusion that no reduction in the penalty was appropriate under the statute and regulations, the review committee relied upon 7 C.F.R. § 729.44(b) which makes the producer responsible for monitoring the entries on his marketing card and taking the necessary steps to correct any errors. The review committee also pointed out that 7 C.F.R. § 729.49(c) assigns joint and several liability to the producer and handler for penalties resulting from errors made on the marketing card.

■ Congressional intent as to the proper circumstances for penalty reductions under this statute can be gleaned from the statute's legislative history. The penalty reduction provision (7 U.S.C. § 1359(k), P.L. 96–31) was added to the statute in 1979 in response to problems that developed in implementing major changes in the peanut price support program made by the Food and Agricultural Act of 1977, P.L. 95–113. The 1977 Act introduced a new two-tier price support system which involved more complicated record keeping by producers and led to a large number of clerical errors resulting in excess marketings.[17] As the House and Senate reports indicate, Congress recognized specific record-keeping problems created by the 1977 changes in the peanut price support program and provided a specific remedy in P.L. 96–31 (7 U.S.C. § 1359(k)). In our opinion, this legislative history makes clear that Congress did not intend the authority vested in the Secretary by 7 U.S.C. § 1359(k) to be used to relieve producers and handlers of liability for the kind of errors involved in this case—i.e., deliberate alterations of entries on the peanut marketing cards which only ASCS officials had authority to make. We therefore hold that the review committee correctly determined, in this case, that such alterations were not unintentional or unknowing within the meaning of the Act. The review committee's actions were entirely consistent with the terms of the statute and applicable regulations were amply supported by the record. Consequently, we find that the district court erred when it concluded that the evidence did not support the review committee's decision.

Having concluded that the district court's order must be reversed and the committee's decision affirmed, it is unnecessary for us to discuss appellant's second proposition of error dealing with the district court's authority to order a reduction of the marketing quota penalties without regard to other statutory conditions. Appellants' Motion for Oral Argument is hereby denied.

**REVERSED AND REMANDED WITH DIRECTIONS** to reinstate the review committee's decision.

REYNOLDS, P.J., and YOUNG, J., concur.

---

17. H.R.Rep. No. 96–213, 96th Cong., First Sess., 2 (1979); S.Rep. No. 96–118, 96th Cong., First Sess., 2 (1979), U.S.Code Cong. & Admin. News 1979, p. 341.