**James K. COPLEY, Plaintiff,**

v.

**Howard K. ELLIOT, et al., Defendants.**

**Civil Action No. 95–0142–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Dec. 10, 1996.

---

Matthew J. Cody, Jr., Lebanon, Virginia, for plaintiff.

Richard A. Lloret, Abingdon, Virginia, for defendants.

JONES, District Judge.

This is an appeal from the determination of a burley tobacco allotment under the provisions of the Agricultural Adjustment Act of 1938, 7 U.S.C. § 1281 *et seq.* (1988). The county committee, believing it was legally obligated to do so, subtracted one-fifth of the allotment to a farm owned by James K. Copley, based on a mistake in marking an aerial photograph by someone in the government office. Mr. Copley seeks to overturn the action of the committee. I find that the committee should have simply corrected the mistake, and not penalized Mr. Copley. Accordingly, I reverse the decision below.

## I

The federal government, through the United States Department of Agriculture

("USDA"), administers a complex regulation of the farming industry in our country, which includes the sale of tobacco. As part of this regulation, there has existed for many years a tobacco quota system, which involves the assignment of tobacco allotments to individual farms in the tobacco-growing areas of the United States. For burley tobacco, this system once involved allotment by acres of tobacco grown, but currently individual farms are assigned a certain quota of pounds of tobacco which may be sold. As stated by the defendants in their brief in this case, "[a]llotments can be bought, sold and leased—they have become a valuable property right." Brief in Support of Motion for Summary Judgment ("Defendants' Brief") at 1 (Nov. 6, 1996).

By statute, the actual allotments are made by local committees, established by law, and composed of local citizens knowledgeable in the business. 7 U.S.C. § 1313(b); 7 C.F.R. Pt. 7. The USDA has adopted regulations which guide the work of these local committees. *See* 7 C.F.R. Pts. 7, 718, 719. The administrative work of maintaining the allotment system, including keeping records, is undertaken by a Consolidated Farm Service Agency ("CFSA"), a part of the USDA, located in each farming county. 7 C.F.R. § 7.34; Defendants' Brief at 1–2.

James K. Copley, the appellant here, has owned a farm in Washington County, Virginia, since at least 1970, along with certain of his family members. Since 1987, he has been the sole owner. The farm consists of approximately 200 contiguous acres. Over the years, through original allocation and purchase from others, Mr. Copley has increased the tobacco allotment of the farm. At the beginning of the 1995 crop year, the Copley farm was allotted 3,200 pounds of burley tobacco.

By letter dated May 4, 1995, Mr. Copley was advised by the CFSA in Washington County that his farm's allotment had been "reconstituted" by the county committee and his quota accordingly reduced. The cause of this change was that in June of 1994, Ralph and Julia Frye purchased a tract of land adjoining Mr. Copley's land. The Frye tract, composed of 14.8 acres, had been purchased

from McKinley E. Buchanan. Mrs. Frye, a USDA employee who managed the CFSA office in an adjoining county, had discovered that while the Washington County CFSA records reflected that Mr. Copley and his brother were the sole owners of the Copley farm, an aerial photograph on record in the office, on which the boundary lines of county farms had been hand-drawn with red pencil, erroneously showed the small tract that the Fryes had purchased as part of the larger Copley farm, known in the records as farm number 2525. Mrs. Frye accordingly filed a form requesting a "reconstitution" of the allotment, on the ground that there had been a "division" of farm 2525. Without prior notice to Mr. Copley, the county committee agreed and the Frye farm was eventually assigned 640 pounds—or one fifth—of the Copley quota of 3,200 pounds, leaving Mr. Copley with a 2,560-pound allotment.

As soon as he learned of it, Mr. Copley asked for a reconsideration of the committee's action, because, as his handwritten letter explained, "[w]e did not sell any of our farm." (Rec.44). The county committee held a hearing on his request, but declined to change its position.[1] Mr. Copley then appealed the committee's action to a review committee, established to hear appeals from county committees. 7 C.F.R. Pt. 711.

The review committee held a hearing on August 8, 1995, and thereafter issued findings of fact and conclusions, upholding the action of the county committee. It is from that decision that Mr. Copley has sought review in the present proceeding.

## II

The review by this court is limited in scope. 7 U.S.C. § 1366. The court may only consider questions of law, and findings of fact by the review committee are conclusive, if supported by substantial evidence. *See McLamb v. Pope*, 657 F.2d 77, 78–79 (4th Cir.1981). In fact, the evidence in the present case is uncontested. It is only the legal effect of the facts that is at issue. Accordingly, while I find all of the facts established by the review committee to be adequately supported, I respectfully disagree with its legal conclusion that the county committee acted properly.

As the review committee found, Mr. Copley showed that for more than 70 years, and prior to the enactment of the Agricultural Adjustment Act of 1938, which established the federal quota system, no tobacco had been grown on the Buchanan tract, which is now the Frye farm. Probably because it never had a tobacco crop, the Buchanan tract had never been registered with the CFSA office in Washington County.[2] As further found by the review committee, the records showed that farm 2525 was solely owned by Mr. Copley or a family member. It was only the hand-drawn lines on an aerial photograph that showed incorrectly that the Copley farm also included the Buchanan tract.[3]

The county committee clearly felt that it had no choice but to "divide" farm 2525 when this error was brought to its attention. Under USDA regulations, there must be a "reconstitution" of the allotment when a farm division occurs, unless the parties agree otherwise. *See* 7 C.F.R. 719.3(d). However, the situation here was not one that could rationally be included within the reasons mandating a reconstitution. This was a simple mistake—while one of the records of the agency showed correctly that farm 2525 was owned

---

1. Mr. Copley did obtain some administrative relief. At first, the county committee decided to reduce the allotment by nearly one-third, since it determined that of the total 12.6 acres of "cropland" on the two farms, the Frye farm had 3.7 acres, or 29%. However, after discussions with Mr. Copley, it determined that he had purchased a portion of the allotment in 1993 and the committee decided that only the basic quota of the Copley farm should be divided. The committee found that the "current year equivalent" of the purchased quota was 300 pounds. Accordingly, as stated in the CFSA records, "[c]orrections were made to both farms on May 15, 1995, to

return the 300 pounds of quota to Mr. Copley." (Rec.49).

2. The evidence below was that there are numerous farms without tobacco allotments that are not registered.

3. Mr. Copley described the aerial photograph in question as "fuzzy." (Rec.127). The copy which is part of the record certainly confirms that description. (Rec.1–2). No one at the CFSA office was able to explain how or when the mistake on the photograph occurred. (Rec.138).

by Mr. Copley, another record showed that farm 2525 contained adjoining land owned by another person. The true state of affairs was that the former record of the agency was correct and the latter was wrong. Nothing in the evidence reveals that the county committee in the past had ever made an actual determination that farm 2525 included both the Copley and the Buchanan tracts.

If the evidence showed that the Copley allotment had in fact been partially determined by the improper inclusion of the Buchanan tract, there might be a better argument for a finding that a reconstitution was justified. But the evidence below was that while the relative size of the cropland on each farm was a proper basis of the reconstitution, the original determination of the Copley allotment had not depended upon any erroneous inclusion of the Buchanan tract. (Rec.118).

### III

Under these circumstances, the proper action of the county committee should have been simply to correct its records. That would be an easy matter, since the only error was in certain lines drawn on a photograph. Mr. and Mrs. Frye could still register their farm, which their predecessors in title had never done, although they obviously would not be entitled to a portion of the Copley allotment.[4]

██ It is generally always within the power of a government agency to correct its mistakes. *See McKart v. United States,* 395 U.S. 185, 194, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969) (discussing that fundamental basis for exhaustion doctrine is to allow an agency to "correct its own errors.") In fact, as here, it may be obligated to do so, since otherwise there might be raised a serious question of the taking of a valuable property right without just compensation.

For the reasons stated, the decision of the review committee will be reversed with di-

rections to set aside the action of the county committee dividing farm 2525.

An appropriate judgment will be entered.

---

4. Whether the Fryes would be in a position to receive a new allotment is not shown by the evidence and beyond the power of the court in this case.